UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSAN JEANELLA PERRIGO, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | CASE NO. 12-CV-186-FHM |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration,[1] ) | |
| ) | |
| DEFENDANT. ) | |

## OPINION AND ORDER

Plaintiff, Susan Jeanella Perrigo, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff, Susan Jeanella Perrigo's applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) David W. Engel, was held September 30, 2010. By decision dated October 22, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on February 15, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards.  *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

The Court holds that the existing record and findings will not support the denial of benefits on the ALJ's stated rationale and, therefore the case must be REVERSED and REMANDED for further proceedings.

## **Background**

Plaintiff was 40 years old on the alleged date of onset of disability and 44 years old on the date of the denial decision.  She has a high school education and formerly worked as a customer service representative, quality control manager, data entry clerk, and insurance agent.  Plaintiff claims to have been unable to work since March 31, 2006[3], as a result of physical and mental impairments, however, for purposes of this appeal, only

---

[3] Only Plaintiff's neuropathy is at issue here.  Therefore, her mental impairments and records will not be discussed or summarized.

Plaintiff's neuropathy is at issue. [Dkt. 16, p. 2].

## The ALJ's Decision

The ALJ determined that the Plaintiff's severe impairments include reactive airway disorder and/or asthma, anxiety and depression, and diabetes mellitus. [R. 17]. The ALJ found the neuropathy was a non-medically determinably impairment because the diagnosis was provided by a nurse practitioner, not a physician. [R. 18].

The ALJ further determined that Plaintiff has the following residual functional capacity:

> [W]ith respect to living, carrying, pushing, and pulling, she is limited to light and sedentary exertion work.  With respect to walking or standing, she is limited to 2 hours (combined total) of an 8-hour workday, with regular work breaks.  She is able to sit for 6 hours (combined total) of an 8-hour workday, with regular work breaks.  She is unable to perform tasks requiring overhead reaching more than occasionally and is further unable to perform tasks requiring the use of foot pedals more than occasionally.  She is able to climb ramps or stairs only occasionally, is able to bend, stoop, crouch, and crawl not more than occasionally and is unable to climb ropes, ladders, and scaffolds, or work in environments where she would be exposed to unprotected eights and dangerous moving machinery parts or environments where she would be exposed to extremes of temperature (less than 50 degrees Fahrenheit or more than 90 degrees Fahrenheit).  She is able to understand, remember, and carry out simple to moderately detailed or complex instructions on sustained basis in a work environment, and unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over the telephone.  She is afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations.

[R. 20-21].  Although Plaintiff was unable to perform her past relevant work based on the

testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 31-32]. Therefore, the ALJ found that the Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Analysis

Plaintiff asserts that the ALJ did not properly consider her diabetic neuropathy. As relevant to this issue the medical evidence shows that on January 26, 2010, Plaintiff was diagnosed with hyperglycemia and non-insulin dependent diabetes during an emergency room visit. She was instructed to follow up at the clinic. On February 9, 2010, Plaintiff was seen at the clinic and reported some burning sensation in her feet and legs present for the last several months and is progressive. She was told to return to the office in 2 weeks for diabetic foot clinic class. On March 2, 2010, Plaintiff was seen at the clinic and reported burning in both feet. She was prescribed medication and told to return to the office in 3 months. On June 16, 2010, Plaintiff was seen at the clinic and reported painful burning in fingers, toes, and up her limbs. Plaintiff stated the medication did help with the pain.

On July 8, 2010, nurse practitioner Enders, who had been seeing Plaintiff at the clinic, completed a Medical Source Opinion of Residual Functional Capacity which included detailed medical findings to support the assessment. On July 16, 2010, Dr. Craig signed a form agreeing with the nurse practitioner's assessment.

On October 22, 2010, the ALJ entered his Decision which gave very little weight to the opinion of Dr. Craig. The Decision did not separately address the opinion of nurse practitioner Enders but it is clear that the ALJ also gave very little weight to her opinion.

4

On December 23, 2010, after the ALJ entered his Decision, Plaintiff submitted a letter from nurse practitioner Enders which states that in July 2010 Plaintiff had a detailed diabetic foot exam in the office. The letter provided detailed findings of the exam which are consistent with the Medical Source Opinion of Residual Functional Capacity.   [R. 468]. The Appeals Council considered this letter and it is part of the record before the court. See *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

The reasons the ALJ gave for giving very little weight to the opinions of Dr. Craig, and by implication nurse practitioner Enders, were that it was really nurse practitioner Enders and not Dr. Craig who was offering the opinion, that Dr. Craig did not personally examine Plaintiff, and that nurse practitioner Enders may not have really performed the tests referenced in her Medical Source Opinion of Residual Functional Capacity form because those tests are not contained in the record.  In another portion of his Decision, the ALJ discounted the Plaintiff's complaints of neuropathy because the diagnosis was made by a nurse practitioner, Plaintiff had only been treated for a brief period of time, and Plaintiff had not sought out specialized treatment despite a rapid escalation of symptoms.

Except for the concern that nurse practitioner Enders may not have performed the tests referenced on the Medical Source Opinion of Residual Functional Capacity, the reasons stated by the ALJ are not good cause to give very little weight to the opinions of Dr. Craig and nurse practitioner Enders.  There is nothing in the record to support that it is inappropriate for a nurse practitioner to see patients, perform tests and provide care. The assessment and opinions of nurse practitioner Enders must be considered by the ALJ. 20 C.F.R. § 404.1527(d), *Social Security Ruling* (SSR) 06-03p, 2006 WL 2329939, *4-*5. There is also nothing in the record to support that it is inappropriate for a doctor to review

and agree with the assessment of a nurse practitioner. Finally, there is nothing in the record to suggest that Plaintiff was acting unreasonably in following the treatment plan provided by the clinic and not seeking more specialized care on her own.

The ALJ's concern that nurse practitioner Enders may not have performed the tests is the only substantial reason the ALJ gave for giving very little weight to the opinions of Dr. Craig and nurse practitioner Enders. In this regard the ALJ accurately stated that the record of Plaintiff's visits to the clinic on February 19, 2010; March 2, 2010, and June 16, 2010, do not contain those tests. However, the tests are reflected on the July 8, 2010 Medical Source Opinion of Residual Functional Capacity. Further, nurse practitioner Enders set forth the results of her examination and confirmed in her letter of December 23, 2010 that a detailed diabetic foot exam was done in July 2010. [R. 468].

The ALJ did not have the benefit of the December 23, 2010 letter which was submitted to the Appeals Council. The court finds that if the ALJ had the information in the December 23, 2010 letter he may have reached a different conclusion regarding the weight to give to the opinions of Dr. Craig and nurse practitioner Enders. This in turn may have changed the ALJ's Residual Functional Capacity determination and the disability determination. The case must therefore be remanded for the ALJ to reconsider the opinions of nurse practitioner Enders and Dr. Craig in light of the evidence submitted to the Appeals Council.

## Conclusion

The ALJ's decision is REVERSED and REMANDED for the ALJ to reconsider the opinions of Dr. Craig and nurse practitioner Enders in light of this Opinion and Order.

SO ORDERED THIS 1st day of July, 2013.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE